**Joseph VISNOVEC, Plaintiff,**

v.

**YELLOW FREIGHT SYSTEM, INC., Defendant.**

**Civ. No. 3–88–815.**

United States District Court, D. Minnesota, Third Division.

March 23, 1990.

Kent D. Rossi, Rossi, ReMine & Pegg, for plaintiff.

Andrew R. Clarke, Mackall, Crouse & Moore, for defendant.

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER FOR JUDGMENT

RENNER, District Judge.

The above entitled matter having come before this Court on stipulation of the facts by counsel, and the Court having heard the arguments of counsel, having considered the briefs, the pleadings and the file and records of the case, the Court makes the following Findings of Fact, Conclusions of Law and Order for Judgment:

### FINDINGS OF FACT

The Stipulations of Facts by the parties dated December 11, 1989 and December 27, 1989 are hereby adopted as the Findings of Fact of the Court.

## CONCLUSIONS OF LAW

1. That the cause of action of plaintiff alleging violation of Minn.Stat. 181.953, Subd. 9 is preempted by the Labor Management Relations Act, 29 U.S.C. § 185.

2. That the cause of action of plaintiff alleging violation of Minn.Stat. 181.953, Subd. 10 is not preempted by the Labor Management Relations Act, 29 U.S.C. § 185.

3. That the cause of action of plaintiff alleging violations of Minn.Stat. § 181.950 through § 181.957 is preempted by Department of Transportation regulations at 49 C.F.R. 391 et seq. regarding physical qualifications for drivers.

## ORDER FOR JUDGMENT

IT IS HEREBY ORDERED that plaintiff's claim alleging violations of Minn.Stat. § 181.950 through § 181.957 is dismissed with prejudice. LET JUDGMENT BE ENTERED ACCORDINGLY.

## MEMORANDUM

Plaintiff Visnovec alleges that defendant Yellow Freight System, Inc. ("Yellow Freight") violated Minnesota law by terminating his employment on the basis of marijuana use without following the requirements of Minn.Stat. § 181.950 et seq., "Drug and Alcohol Testing in the Workplace." Specifically, plaintiff argues that defendant violated Minn.Stat. § 181.953, Subd. 9 by taking an adverse personnel action without a confirmatory retest as requested by the plaintiff. He also argues that defendant failed to offer him the opportunity for drug rehabilitation following his first positive confirmatory test result as required by Minn.Stat. § 181.953, Subd. 10. Defendant contends that plaintiff was tested and terminated for drug use pursuant to a drug testing system consistent with federal transportation law and negotiated in a collective bargaining agreement ("Agreement") between plaintiff's union and defendant. Included in that policy were requirements for testing, specific procedures, an opportunity for rehabilitation, and disciplinary procedures. Defendant argues that plaintiff's claims under the Minnesota stat-

ute are preempted by § 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, and by federal transportation law. Defendant further asserts that its compliance with the terms of the Agreement resulted in compliance with the Minnesota statute as well.

■ A state law cause of action is preempted by Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, if "resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract." *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 220, 105 S.Ct. 1904, 1915–16, 85 L.Ed.2d 206 (1985). State-law rights and obligations are preempted if they do not exist independently of private agreements and, therefore, can be waived or altered by agreement of private parties. *Id.*, 471 U.S. at 213, 105 S.Ct. at 1912. However, a state law is not preempted if it involves "nonnegotiable state-law rights" that are "independent of any right established by contract." *Lueck*, 471 U.S. at 213, 105 S.Ct. at 1912. With regard to rights of workers, "pre-emption should not be lightly inferred in this area, since the establishment of labor standards falls within the traditional police power of the State." *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987).

In a subdivision titled "Employee protections under existing collective bargaining agreements," the Minnesota law states that the protections provided by §§ 181.950–181.954 shall not be construed

> to interfere with or diminish any employee protections relating to drug ... testing already provided under collective bargaining agreements in effect ... *that exceed the minimum standards and requirements* for employee protection provided in those sections.

Minn.Stat. § 181.955, Subd. 2 (emphasis added). In determining whether plaintiff's claims are preempted, the Court must consider whether any rights under the Minnesota statute exist independently of the con-

tract and, if they are not independent, if they were waived or altered by agreement of private parties.[1] The Court must also consider whether resolution of the state claims requires interpretation of the Agreement.

■ Defendant points out, and the Court agrees, that under Minnesota law the use of a confirmatory retest is optional and therefore not a part of the minimum requirements established by the law. In § 181.953, subd. 9, the employee "may" request such a retest. The provision requiring a positive test result on the confirmatory retest before adverse personnel action may be taken is therefore dependent on the employee's initial request for such a retest. The collective bargaining agreement under which plaintiff was tested does not require a retest before a discharge can occur. Since the request for a retest was optional in the Minnesota statute, the provision providing a retest was a right that could be and was waived by agreement of the parties through the collective bargaining process. Therefore, preemption occurs with regard to this provision.

■ Defendant argues that its action in compliance with the Agreement also meets Minn.Stat. § 181.953, Subd. 10, requiring an employer to offer an employee an opportunity for rehabilitation *after* the first positive confirmatory test and before any adverse personnel actions are taken. However, the Agreement only offers a leave of absence for drug abuse rehabilitation if requested *"prior* to the commission of any act subject to disciplinary action." National Master Freight Agreement, Article 35, § 3(b) (emphasis added). Therefore, compliance with the Agreement does not constitute compliance with Minnesota's minimum requirement. Minnesota law provides its workers a right that exists independently

from the labor contract. To resolve this claim under state law, a Court must determine whether plaintiff received an offer of rehabilitation *following* a first positive confirmatory test. This does not require an interpretation of the labor contract.[2] The Court concludes that plaintiff's claim of violation of Minn.Stat. § 181.953, Subd. 10 is not preempted by § 301 of the LMRA.

■ Defendant also argues that the state law claim before the Court is preempted by federal law, specifically, Department of Transportation ("DOT") regulations at 49 C.F.R. 390 *et seq.* The Supreme Court in *Schneidewind v. ANR Pipeline Co.,* 485 U.S. 293, 108 S.Ct. 1145, 99 L.Ed.2d 316 (1988) articulated several circumstances in which legislation enacted pursuant to the Commerce Clause will preempt state statutes:

> Congress implicitly may indicate an intent to occupy a given field to the exclusion of state law. Such a purpose properly may be inferred where the pervasiveness of the federal regulation precludes supplementation by the States, where the federal interest in the field is sufficiently dominant, or where "the object sought to be obtained by the federal law and the character of obligations imposed by it ... reveal the same purpose." [citation omitted]. Finally, even where Congress has not entirely displaced state regulation in a particular field, state law is pre-empted when it actually conflicts with federal law.

*Id.,* 485 U.S. at 300, 108 S.Ct. at 1150.

When creating the Department of Transportation in 1966, Congress declared that the general welfare required "the development of national transportation policies and programs conducive to the provision of ... safe, ... transportation." 49 U.S.C. § 1651(a). Congress' intent to occupy the

---

1. Plaintiff argues in his trial brief that defendant's references to Minnesota state law in its dealings with employees invited reliance by plaintiff that forms consideration for an individual employment contract between plaintiff and Yellow Freight. However, the parties have not stipulated to the facts necessary to make this argument. Therefore the argument must fail.

2. Resolution of this claim does require an interpretation of the Minnesota statute. Defendant argues that the statute does not specify at what point in time a rehabilitation program has to be made available to the employee. The Court finds that Minn.Stat. § 181.953, Subd. 10, requires the opportunity for rehabilitation to be offered after the first positive result on a confirmatory test.

field of national transportation policy is evident in 49 U.S.C. § 1653(b)(2)(A) stating: "Nothing in this chapter shall be construed to authorize, without appropriate action by Congress the adaptation, revision or implementation of ... any transportation policy." Congress vested the Department of Transportation with the power to establish physical qualifications for drivers. 49 U.S.C. § 1655(e)(6)(C). These qualifications are promulgated in the Federal Motor Carrier Safety Regulations, 49 C.F.R. § 391 *et seq.* Pursuant to these regulations, a driver is not physically qualified if he or she uses marijuana, and a motor carrier shall not permit a non-qualified person to drive a motor vehicle. The regulations include a scheme for resolutions of conflicts regarding evaluation of physical qualifications.

Based on these regulations, enacted as a part of national transportation policy, the Court finds that the federal regulatory scheme governing the physical qualifications for drivers indicates an intent on the part of Congress to occupy the field of driver regulation to the extent of existing regulations. The Court notes that the First Circuit, in *French v. Pan Am. Exp., Inc.,* 869 F.2d 1 (1st Cir.1989), came to a similar conclusion in a case involving a conflict between state and federal law with regard to drug testing of airline pilots, as did Judge Diana Murphy in this district in *Northwest Airlines, Inc. v. Gomez-Bethke,* 34 Emp.Prac.Dec. (CCH) ¶ 34,561 (D.Minn.1984).

Given its finding of preemption, the Court finds it unnecessary to address whether defendant's actions were in compliance with Minn.Stat. § 181.953, subds. 9 and 10.